1  CROSNER LEGAL, P.C.
   Michael T. Houchin (SBN 305541)
2  mhouchin@crosnerlegal.com
   9440 Santa Monica Blvd. Suite 301
3  Beverly Hills, CA 90210
   Tel: (866) 276-7637
4  Fax: (310) 510-6429
5  *Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH WILDE and MAXWELL ELLIOTT, individually, and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | <u>DEMAND FOR JURY TRIAL</u> |
| MISSISSIPPI TORNADO ALLEY, LLC | |
| Defendant. | |

## INTRODUCTION

1. Plaintiffs Deborah Wilde and Maxwell Elliott ("Plaintiffs") on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby bring this action against Mississippi Tornado Alley, LLC ("Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

2. This is a class action for monetary and injunctive relief arising from Defendant Mississippi Tornado Alley, LLC's pervasive and unauthorized use of Plaintiffs' and the proposed Class Members' names and identities to advertise and sell its commercial products and services, in direct violation of the Washington Personality Rights Act ("WPRA"), RCW § 63.60.050.

3. Defendant owns and operates the highly accessible online directory, Fast People Search (fastpeoplesearch.com), which functions as a predatory data broker. Defendant systematically compiles and publishes vast quantities of personally identifying information ("PII") about millions of private individuals, including their names, residences, relatives, and private phone numbers.

4. The cornerstone of Defendant's profitable enterprise is the creation and dissemination of publicly accessible "free-preview" profile pages, which serve as direct, unauthorized advertisements for the Defendant's own services and for its affiliate partners' paid background check subscriptions.

5. To maximize its revenue, Defendant publishes commercial profile pages for Plaintiffs Deborah Wilde (a Washington resident) and Maxwell Elliott (a Colorado resident) that prominently display their names, residences, ages, addresses, aliases, and multiple phone numbers, including mobile and wireless lines.

6. Defendant utilizes this highly sensitive, personalized information to attract, convert, and refer paying customers to third-party services like TruthFinder.com, Spokeo.com, and BeenVerified.com, thereby appropriating Plaintiffs' identities for Defendant's own financial gain without their consent.

7. The WPRA explicitly grants every individual a valuable, transferable property right in the commercial use of his or her "name, voice, signature, photograph, or likeness." RCW

63.60.010. Defendant's continuous exploitation of Plaintiffs' names and likenesses for advertising purposes, without their express or implied consent, constitutes a clear and ongoing injury to this substantive property right.

## PARTIES

8. Plaintiff Deborah Wilde is a natural person and is, and at all times relevant hereto was, a resident of the State of Washington.

9. Plaintiff Maxwell Elliott is a natural person and is, and at all times relevant hereto was, a resident of the State of Colorado.

10. Defendant Mississippi Tornado Alley, LLC is a limited liability company organized under the laws of California. It operates the Fast People Search website and maintains its principal address and headquarters at 1915 21st Street, Sacramento, California 95811. Defendant is a "person" within the meaning of the WPRA, RCW 63.60.050.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because: (a.) The proposed Class consists of at least 100 members; (b.) There is minimal diversity because Plaintiffs are citizens of a State different from the California-headquartered Defendant; and, (c.) The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, given the scale of Defendant's nationwide operation and the WPRA statutory damages of $1,500 per violation. *See* RCW § 63.60.060.

12. This Court has general personal jurisdiction over Defendant Mississippi Tornado Alley, LLC because it is formed under the laws of the State of California and maintains its principal place of business in Sacramento, California, thereby rendering it "at home" in this forum. Defendant's contacts with the State of California are so continuous and systematic as to render it essentially at home in the State.

13. Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant Mississippi Tornado Alley, LLC resides in this District as its principal place of business and primary address of record are located in Sacramento, California.

**FACTUAL BACKGROUND**

**A. THE WASHINGTON PERSONALITY RIGHTS ACT**

14. The Washington Personality Rights Act, RCW § 63.60, recognizes and protects an individual's commercial right of publicity. This statute is intended to apply to all individuals, living and deceased, regardless of their place of domicile. RCW § 63.60.010.

15. The core provision of the WPRA creates a private right of action against "[a]ny person who uses or authorizes the use of a living... individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or **for purposes of advertising products, merchandise, goods, or services**... without written or oral, express or implied consent of the owner of the right..." RCW § 63.60.050 (emphasis added).

16. The WPRA is a broad remedial statute designed to protect all individuals, not just celebrities, regardless of whether their name has been previously exploited commercially. RCW § 63.60.010.

17. Under WPRA, liability can be established based on the nature of the use itself, meaning the statute does not require a plaintiff to show that their name or likeness has a unique quality or reputation to be valuable. *See LaRock v. ZoomInfo Techs. LLC*, 2025 WL 1345264, at *3 (W.D. Wash. May 8, 2025) (noting the WPRA "does not condition liability on 'reputation, prestige, or other value associated with' a given name.").

18. Courts have recognized that the use of an individual's profile to advertise a data broker's subscription services goes to the heart of the business and is sufficient to overcome defenses such as "merely descriptive" or "incidental use." *See Carrera v. Whitepages, Inc.*, 2025 WL 1796574, at *5 (W.D. Wash. June 30, 2025); *see also Sant v. RocketReach LLC*, 2025 WL 1898926, at *3-4 (W.D. Wash. July 9, 2025). Specifically, the use is deemed non-incidental because it is instrumental in obtaining paying customers and demonstrating the breadth of the defendant's database. *LaRock v. ZoomInfo Techs. LLC*, 2025 WL 1345264, at *3.

19. Because the WPRA provides for minimum statutory damages of $1,500.00 per violation, Plaintiffs and the class members possess a strong remedy against the unauthorized appropriation of their identities for advertising purposes. *See* RCW § 63.60.060.

### B. THE FAST PEOPLE SEARCH WEBSITE

20. Defendant Mississippi Tornado Alley, LLC operates a massive data brokerage business by continually scraping, compiling, indexing, and publishing highly sensitive PII on millions of Americans via the website Fast People Search.

21. Defendant's entire revenue stream is predicated upon monetizing this PII by using it as advertising material to sell background reports, subscriptions, and affiliate referral traffic.

22. The core of Defendant's commercial strategy is the unauthorized, massive use of individuals' PII, including the names and likenesses of Plaintiffs, as the anchor for its advertising efforts.

23. For example, Fast People Search maintains a publicly accessible webpage dedicated to Plaintiff Deborah Wilde. This webpage functions as a deliberate commercial "free-preview" profile designed to funnel visitors to paid services, as shown in the screen shots below:



**Deborah Wilde**
in Yakima, WA (Washington)

Age 65

📇 **Full Background Report** (Sponsored)

- Arrests & Criminal Records
- Warrants & Police Records
- Felonies & Misdemeanors
- Nationwide Court Records
- Registered Sex Offender Check
- Bankruptcies, Judgements, Liens
- Marriage & Divorce Records
- Evictions & Foreclosures
- Properties & Assets
- Business Records
- Professional Licenses
- Social Media Records

**VIEW FULL BACKGROUND REPORT »**

🏠 **Current Address** (Since February 1993)

▬▬▬▬▬▬▬
Yakima WA 98901
Yakima County

4

CLASS ACTION COMPLAINT

**Full Name:**
Deborah A Wilde

**Phone Numbers**
for Deborah Wilde in Yakima, WA

(253) ▮▮▮▮
Wireless
T-Mobile USA Inc
First reported March 2020

(509) ▮▮▮▮
Landline
Neutral Tandem-Illinois LLC - IL
First reported January 2014

(865) ▮▮▮▮
Landline
Charter Fiberlink LLC
First reported June 2012

(509) ▮▮▮▮
Landline
Qwest Corporation
First reported August 2010

**Email Addresses**
for Deborah Wilde in Yakima, WA

[redacted]

**Also Known As**

Deborah Wilde
Debby Wilde
Deborah A Mwilde

Debra A Wilde
Debra M Wilde

24. This profile page, published without Plaintiff Wilde's consent, explicitly identifies her by: (a.) Full name, age, and Washington residence; (b.) Residential information including an extensive list of six specific past addresses; (c.) prominent listing of multiple phone numbers, including mobile lines; and, (d.) Other identifying attributes, including her aliases, email addresses, and a comprehensive list of relatives.

25. Fast People Search also maintains a separate publicly accessible webpage dedicated to Plaintiff Maxwell Elliott, located at a unique URL. This profile page identifies him by: (a.) Full name, age, and Colorado residence; (b.) His current Colorado address and a listing of six previous addresses, demonstrating the comprehensiveness of the data gathered; (c.) A

prominent listing of phone numbers; and (d.) His full name, aliases, and a comprehensive list of relatives as shown in the screenshots below:



26. The webpages for both Plaintiffs are designed identically and densely populated with commercial calls to action and direct affiliate advertising, demonstrating Defendant's sole purpose is commercial exploitation.

27. For example, both pages prominently feature paid results "Sponsored by TruthFinder.com," "Sponsored by BeenVerified.com," and/or "Sponsored by Spokeo.com."



28. These sections list Plaintiffs' names, ages, and locations, followed by a large, clickable "VIEW DETAILS" button, establishing a direct, unconsented use of Plaintiffs' identities to generate highly valuable traffic and revenue for these third-party affiliates. If a web user clicks on the "VIEW DETAILS" button, it directs him or her to paid affiliate websites where more information can be obtained about Plaintiffs for a fee.

29. Fast People Search also features a section titled "Full Background Report (Sponsored)" listing highly specific features like "Arrests & Criminal Records," "Warrants & Police Records," and "Marriage & Divorce Records," followed by a "VIEW FULL BACKGROUND REPORT" button as shown below. This serves as a clear, unconsented advertisement for paid services.

**Deborah Wilde in Yakima, WA (Washington)**

Age 65

**Full Background Report** (Sponsored)

- Arrests & Criminal Records
- Warrants & Police Records
- Felonies & Misdemeanors
- Nationwide Court Records
- Registered Sex Offender Check
- Bankruptcies, Judgements, Liens
- Marriage & Divorce Records
- Evictions & Foreclosures
- Properties & Assets
- Business Records
- Professional Licenses
- Social Media Records

**VIEW FULL BACKGROUND REPORT »**

30. Fast People Search also features a section titled "Full Background Report (Sponsored)" listing highly specific features like "Arrests & Criminal Records," "Warrants & Police Records," and "Marriage & Divorce Records," followed by a "VIEW FULL BACKGROUND REPORT" button as shown below. This serves as a clear, unconsented advertisement for paid services.

31. Additionally, the bottom of both profiles contains an explicit pitch for the bulk commercial licensing of the underlying data: "NEED MORE DATA IN REAL-TIME? Get access to our partner EnformionGO's Fast Developer API for Contact Enrichment, Sales and

1  Marketing Intelligence. TRY OUR API." This proves Defendant's knowledge of and intent
2  toward commercial use beyond single consumer lookups.

**NEED MORE DATA IN REAL-TIME?**
Get access to our partner **EnformionGO's** Fast Developer API for Contact Enrichment, Sales and Marketing Intelligence.

**EnformionGO**

**TRY OUR API**

32.  Defendant intentionally optimizes these free-preview profile pages with source code to maximize their visibility and ranking in external internet search engine results (Search Engine Optimization, or SEO) when a search is performed for Plaintiffs' names or phone numbers. This demonstrates deliberate action to make Plaintiffs' identities instrumental to its marketing funnel.

33.  Plaintiffs Deborah Wilde and Maxwell Elliott never gave any form of consent, whether written, oral, or electronic, for the use of their names, identities, or likenesses for purposes of advertising, promoting, or selling Defendant's or its partners' products or services.

34.  Defendant's use of Plaintiffs' names and PII is non-incidental and pervasive. This is evidenced by the density of commercial links on the page, the explicit sale of advertising space, and the overall volume of similar profiles deployed across the United States, all designed to convert free traffic into paying customers or lucrative referral revenue. Defendant generates a substantial amount of revenue from its sales of subscriptions to persons who entered Defendant's sales pipeline through its free-preview "profile" preview pages.

35.  As a direct and proximate result of Defendant's unauthorized, commercial use of their names and identities, Plaintiffs and the class members have suffered actual harm, including invasion of their right to privacy and loss of commercial control over their personal property right of identity.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Classes:

**Nationwide Class**

All natural persons residing in the United States for whom Defendant established a publicly-accessible free-preview "profile" page on fastpeoplesearch.com that was published or disseminated during the applicable statutory period.

**Washington Subclass**

All natural persons residing in the State of Washington for whom Defendant established a publicly-accessible free-preview "profile" page on fastpeoplesearch.com that was published or disseminated during the applicable statutory period

37. The Nationwide Class and Washington Subclass are collectively referred to herein as "the Class."

38. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

39. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

40. The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41. <u>Numerosity</u>: The Class Members are so numerous that joinder of all members is impracticable. Defendant's database is alleged to contain information for millions of people. Given the national scope of the Fast People Search website, the proposed Classes number in the millions. The exact size and identities of the Class Members are known only to the Defendant and will be made available through discovery.

42. <u>Commonality</u>: There are questions of law and fact common to the Class that predominate over questions affecting only individual members, as all claims stem from the Defendant's uniform, standardized, and systematic practice of appropriating personal identity across its platform. Common questions include, but are not limited to:

a) Whether Defendant's publication and dissemination of free-preview profile pages constitutes a "use" for purposes of advertising products, merchandise, goods, or services under the WPRA;

b) Whether Defendant's conduct violates the WPRA, RCW 63.60.050;.

c) Whether Defendant's use of personalized data is commercially motivated and non-incidental.

d) Whether Defendant failed to obtain consent from Plaintiffs and Class Members.

e) Whether the Class Members are entitled to statutory damages and/or actual damages.

f) Whether Plaintiffs and the Classes are entitled to permanent injunctive relief requiring Defendant to cease its unlawful practices.

43. <u>Typicality</u>: The claims of Plaintiffs are typical of the Class, in that both Plaintiffs are individuals whose private PII was captured and automatically repurposed by Defendant into a standardized commercial advertisement (the "free-preview profile") without consent, resulting in identical legal and factual injury based on the core issue of unauthorized commercial appropriation of identity.

44. <u>Adequacy</u>: Plaintiffs Deborah Wilde and Maxwell Elliott will fairly and adequately protect the interests of the Class. They have retained competent counsel experienced in complex class action litigation. Plaintiffs have no interests antagonistic to the Classes.

45. <u>Superiority</u>: The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

  b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

  c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

  d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

  e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

  f. This class action will assure uniformity of decisions among Class Members;

  g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

  h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

46. Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

47. Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described.

## FIRST CLAIM FOR RELIEF

**Violation of Washington's Personality Rights Act**

RCW § 63.60.050

48. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

49. Defendant knowingly used, published, and disseminated Plaintiffs' and the Class Members' names, identities, and likenesses in Washington State for the commercial purpose of advertising and selling its products and services (including background reports, subscriptions, affiliate referrals, and API data sales) without their consent.

50. The entirety of Defendant's conduct constitutes a continuous, systematic, and intentional scheme to misappropriate individual identities for direct commercial gain. Each specific "free-preview" profile page is a deliberate act of using the individual's "name" and "likeness" (as defined by the PII and unique, localized profile) to promote Defendant's business enterprise.

51. Defendant's paid products, subscriptions, and affiliate referral services constitute "products, merchandise, goods, or services" and its use of Plaintiff's name constitutes "advertising" within the meaning of the WPRA.

52. The use of Plaintiffs' names and associated PII is not protected by the statutory exemptions.

53. The "Merely Descriptive" Exemption (RCW 63.60.070(5)) does not apply because the unauthorized use is clearly not in good faith. More fundamentally, the use is intended to describe and entice the purchase of more information about the individual (via affiliate links and paid reports) and the breadth of the database using the individual as a bait, not merely to describe "something other than the individual."

54. The "Insignificant, De Minimis, or Incidental Use" Exemption (RCW 63.60.070(6)) does not apply. Defendant's entire business model is predicated on the aggregate appropriation of millions of such profiles. The specific, customized advertising copy, the proliferation of paid affiliate links, and the explicit B2B licensing pitch on the profile pages demonstrates that the use of each individual's identity is instrumental and non-incidental to the Defendant's revenue generation.

55. Defendant's paid products, subscriptions, and affiliate referral services constitute "products, merchandise, goods, or services" and its use of Plaintiffs' names constitutes "advertising" within the meaning of the WPRA.

56. As a direct and proximate result of Defendant's unauthorized and unlawful infringement of Plaintiff's and the Class Members' rights, they are entitled to relief as provided by RCW § 63.60.060, including statutory damages, actual damages, and injunctive relief.

## REQUEST FOR RELIEF

Plaintiffs, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class Representatives and appointing the undersigned counsel as Class Counsel;

b. For an Order and Judgment declaring that the Defendant's conduct violates the Washington Personality Rights Act;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective campaign;

d. Ordering statutory damages in an amount no less than $1,500 per violation;

e. Ordering actual damages;

f. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

g. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

h. Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

Dated: January 8, 2026					CROSNER LEGAL, P.C.


							By:	*/s/ Michael T. Houchin*
								MICHAEL T. HOUCHIN

							9440 Santa Monica Blvd. Suite 301
							Beverly Hills, CA 90210
							Tel: (866) 276-7637
							Fax: (310) 510-6429
							mhouchin@crosnerlegal.com

							*Attorneys for Plaintiffs and the Proposed Class*